Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Anthem Causualty Insurance company is the carrier on the risk.
4. The alleged date of injury was on or about 16 May 1995.
5. The parties stipulated to plaintiff's medical records of Dr. Alexander Snyder, Dr. John Meade, Dr. Howard Mandell, and Dr. Anthony Timms.
6. The parties stipulated to a videotape.
7. The issues presented are:
 a) Whether plaintiff contracted an occupational disease arising out of his employment with defendant-employer?
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 22 years old and had completed the 11th grade.
2. Plaintiff began working for defendant-employer in March of 1995 and as a driller's helper. Plaintiff's job duties included helping set up and stabilize a large mechanical well-drilling rig. To drill a well, defendant-employer's employees first had to set up the drill rig. On average, this procedure took approximately one-half hour. Eight drilling rods are held on the carousel of the drilling rig. Therefore, depending on the depth of the well to be drilled, as many as eight rods were used during the course of a day. Part of plaintiff's job duties involved adjusting the drilling rods with heavy wrenches. For each rod, the wrench was used twice: first to put the rod into place, and then to change it. Since there were no more than eight rods on a carousel, a driller's helper typically would not use the drill wrench more than sixteen times in a given day. On rare occasions, when drilling an exceptionally deep well, more rods may have been needed.
3. Once the drilling process actually began, with a drilling rig doing all the work, plaintiff occasionally shoveled rocks and debris away from the mouth of the well. After drilling for the well was complete, plaintiff shoveled grout into the mouth of the well in order to form a seal. For one well, which was average production for a day, six to eight bags of grout were required. Each bag of grout weighed 47 pounds and was moved by a driller's helper from the drill rig to the opening of the well.
4. While working as a driller's helper with defendant-employer, plaintiff also was involved in a tree-cutting business for several years. Plaintiff testified that he experienced significant pain in his shoulder while performing the tree-cutting job.
5. Will Albriton, another driller for defendant-employer, testified that plaintiff asked him on several occasions to cover for him while plaintiff performed tree-cutting jobs. Mr. Albriton also testified that he saw plaintiff's truck full of cut timber on several occasions during the period of time that plaintiff was employed with defendant-employer.
6. In May of 1995, plaintiff began to experience tenderness in his right shoulder. On 2 June 1995, the plaintiff presented to Dr. Alexander Snyder, an internist, with right shoulder pain. According to the medical records and Dr. Snyder, plaintiff could not recall any specific injuries to his right shoulder. Dr. Snyder obtained an X-ray of the shoulder which revealed total deformity and Dr. Snyder referred plaintiff to an orthopaedic surgeon, Dr. John Meade.
7. Plaintiff presented to Dr. Meade also on 2 June 1995. In taking the patient's history, Dr. Meade reported that for the last three weeks, plaintiff experienced an insidious onset of right scapular pain with lifting when he first got out of bed in the morning. After performing a physical examination and reviewing X-rays of the shoulder, Dr. Meade diagnosed a probable suprascapular nerve palsy. Plaintiff was referred to Dr. Mandell for EMG and nerve conduction studies, which were performed on 7 June 1995.
8. In a return visit to Dr. Meade on 12 June 1995, Dr. Meade indicated that the EMG and nerve conduction studies showed isolated abnormalities in the supraspinatus muscle and the anterior serratus, which was indicative of pathology in the suprascapular nerve proximal to the notch and in the long thoracic nerve.
9. On 22 April 1996, plaintiff returned to Carolina Bone and Joint and was seen by Dr. Anthony Timms. Dr. Timms diagnosed a Grade II AC joint separation with clear supraspinatus muscle atrophy.
10. Dr. Snyder opined that plaintiff's shoulder condition was probably caused by the heavy work which plaintiff performed. However, he offered no testimony as to whether plaintiff's right shoulder condition was due to causes and conditions that were characteristic of and peculiar to his employment with defendant-employer.
11. There is insufficient competent medical evidence in the record to establish that plaintiff's right shoulder condition was due to causes and conditions that were characteristic of and peculiar to his employment with defendant-employer, or that plaintiff's job placed him at an increased risk for contracting a shoulder injury as compared to members of the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that his shoulder condition was due to causes and conditions that were characteristic of and peculiar to his employment with defendant-employer or that plaintiff's job with defendant-employer put him at an increased risk of contracting his shoulder condition as compared to members of the general public not so employed. G.S. § 97-53(13);Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. Plaintiff did not sustain an occupational disease under the Act. G.S. § 97-53(13).
3. Plaintiff did not sustain an injury by accident in May 1995 arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall pay its own costs, except that the defendants shall pay Dr. Snyder's expert witness fee of $85.00.
 S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
RCR:mcl